RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

PHILLIP A. BROOKS
JUSTIN A. SAVAGE
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C.  20044-7611
Ph. (202) 514-3637; fax (202) 616-6583

STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
BLAINE T. WELSH (Bar No. 4790)
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada  89101
Ph. (702) 388-6336; fax (702) 388-6787

Attorneys for Plaintiff United States of America

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>NEVADA POWER COMPANY, )<br><br>Defendant. ) | Civil Action No.<br><br>**COMPLAINT** |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator (the "Administrator") of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

NATURE OF THE ACTION

1.  This is a civil action brought by the United States against NEVADA POWER COMPANY, ("Nevada Power" or "Defendant") pursuant to Sections 113(b) and 167 of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the following:  the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92; the State Implementation Plan ("SIP") adopted by the State of Nevada and Clark County, and approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410, and; Title V of the Act, 42 U.S.C. § 7661 *et seq.*

2.  In 1992, Defendant modified, and thereafter operated, two combustion turbines designated as Units 5 and 6 at its Clark Generating Station ("Clark Station") in Las Vegas, Nevada without first obtaining the requisite permits authorizing the modification and the subsequent operation of these units, and without installing and operating the "Best Available Control Technology" to control emissions of oxides of nitrogen ("$NO_x$") as the Act and SIP require.

JURISDICTION AND VENUE

- 2 -

3.  The Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

4.  Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. §§ 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because violations occurred and are occurring in this District, and Clark Station is operated by Defendant in this District.

5.  Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the Clean Air Act, 42 U.S.C. § 7605.

<u>NOTICES</u>

6.  The United States has provided notice of the commencement of this action to the State of Nevada and Clark County, Nevada, pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

7.  The 30-day period established in 42 U.S.C. § 7413(a)(1), between issuance of the Notices of Violation and commencement of a civil action for violations of the SIP, has elapsed.

<u>THE DEFENDANT</u>

8.  Defendant owns and is the operator of several electrical generating stations in Nevada, including Clark Station in Las Vegas, Clark County, Nevada.

9.  Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

<u>STATUTORY BACKGROUND</u>

- 3 -

10. The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

<u>The National Ambient Air Quality Standards</u>

11. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408. The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

12. Pursuant to Section 109, the Administrator promulgated primary and secondary NAAQS for nitrogen dioxides ("$NO_2$") on November 21, 1971 (36 Fed. Reg. 22,384), with amendments on February 19, 1975 (40 Fed. Reg. 7,043) and June 19, 1985 (50 Fed. Reg. 1985). EPA regulates a broader group of air pollutants – known as oxides of nitrogen ("$NO_x$") – as a surrogate for $NO_2$ because, among other things, $NO_x$ readily converts into $NO_2$ in the atmosphere.          13. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment"

- 4 -

area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable."

14. At times relevant to this complaint, the area in which Clark Station has been located has been classified as attainment for $NO_2$.

15. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS. At times relevant to this complaint, the State of Nevada has had an EPA approved SIP providing for the maintenance of the $NO_2$ NAAQS.

The Prevention of Significant Deterioration Requirements

16. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process. These provisions are referred to herein as the "PSD program."

17. Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and operation of a "major emitting facility" in an area designated as attainment or unclassifiable unless, *inter alia*: a PSD permit "has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part," 42 U.S.C. § 7475(a)(1); "the proposed facility is subject to the best available control

- 5 -

technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility," 42 U.S.C. § 7475(a)(4); "the owner or operator of such facility" prepares certain ambient air quality impact analyses that "demonstrate[ ]," among other things, that the  "emissions from construction or operation of such facility will not cause, or contribute to, air pollution in excess of any . . . maximum allowable increase or maximum allowable concentration for any pollutant in any area to which this part applies more than one time per year . . . .," 42 U.S.C. § 7475(a)(3); and "the proposed permit has been subject to a review in accordance with this section, the required analysis has been conducted . . . and a public hearing has been held with opportunity for interested persons including representatives of the [EPA] Administrator to appear and submit written or oral presentations on the air quality impact of such source, alternatives thereto, control technology requirements, and other appropriate considerations," 42 U.S.C. § 7475(a)(2).

18.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any pollutant to be "major emitting facilities."

19.  Section 169(2)(C) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including a "modification" (as defined in Section 111(a) of the Act).  "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

- 6 -

20. Section 169(3) of the Act, 42 U.S.C. § 7479(3), defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility . . . ."

21. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program for, inter alia, areas in attainment for the NAAQS. Clark County adopted PSD regulations as part of Section 1 (Definitions) and Section 15 (Source Registrations) of the Clark County Health District ("CCHD") Rules. These County rules were approved by EPA on June 21, 1982, and incorporated into the Nevada SIP. 47 Fed. Reg. 26,21 (1982); 40 C.F.R. § 52.1470(c)(24).

22. Section 15 of the CCHD Rules requires, inter alia, "modified" stationary sources of $NO_x$ to obtain an "Authority to Construct Certificate" ("ATC") that meets certain PSD requirements (hereinafter "PSD permit").

23. On September 7, 2004, EPA granted approval of Clark County PSD regulations that are part of Section 0 (Definitions) and Section 12 (Preconstruction Review of New or Modified Stationary Sources) of the Clark County Air Quality Regulations ("CC Air Quality Regulations"). 69 Fed. Reg. 54,006 (2004). EPA subsequently incorporated Sections 9 and 12 into the Nevada SIP. 40 C.F.R. § 52.1470(i)(A)(1).

24. At all relevant times, the Nevada SIP has required companies that have triggered PSD permitting to meet certain procedural and substantive obligations, as specified in Sections 1

- 7 -

and 15 of the CCHD Rules and Sections 0 and 12 of the CC Air Quality Regulations. Those obligations include, without limitation: undergoing PSD permitting that is subject to public notice and an opportunity to comment, including an opportunity for the community and EPA to comment on air pollution controls or other measures proposed to be used as BACT; preparing certain analyses of the ambient air quality impacts of the modification; securing a PSD permit that requires the use of BACT, as determined at the time of permit issuance; and the operation of BACT after the issuance of the PSD permit.

Title V Operating Permits

25. Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD, are collected in one place.

26. Clark County's Title V operating permit program was granted interim approval by EPA on July 13, 1995 (60 Fed. Reg. 36,070) and final approval by EPA on December 5, 2001 (66 Fed. Reg. 63,138). Clark County's Title V operating permit program is codified at Section 19 (Part 70 Operating Permits) of the CC Air Quality Regulations.

27. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and Sections 19.1, 19.2, and 19.4.1.6 of the CC Air Quality Regulations have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

28. Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.2, and Clark County Title V operating permit program regulations, CC Air

- 8 -

Quality Regulations Section 19.4, have at all relevant times required that each Title V permit

include, among other things, enforceable emission limitations and such other conditions as are

necessary to assure compliance with applicable requirements of the Clean Air Act and the

requirements of the applicable SIP, including any applicable PSD requirement to comply with an

emission rate that meets BACT.

29. Section 19.3 of the CC Air Quality Regulations require that a source submit a

complete permit application which, among other things, identifies all applicable requirements

(including any requirement to meet BACT pursuant to PSD), certifies compliance with all

applicable requirements, and contains a compliance plan for all applicable requirements for

which the source is not in compliance.

## ENFORCEMENT PROVISIONS

30. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that

the Administrator may bring a civil action in accordance with Section 113(b) of the Act

whenever, on the basis of any information available to the Administrator, the Administrator finds

that any person has violated or is in violation of any other requirement or prohibition of, *inter*

*alia*:  (1) the Prevention of Significant Deterioration requirements of Section 165(a) of the Act,

42 U.S.C. § 7475(a); (2) the SIP of any State, including Nevada, or any permit issued thereunder,

and; (3) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder.

31. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to

initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil

penalty of up to $25,000 per day for each violation occurring before January 31, 1997 and,

$27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per

day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil

Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701,

against any person whenever such person has violated, or is in violation of, *inter alia,* the

requirements or prohibitions described in the preceding paragraph.

32.  Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an

action for injunctive relief, as necessary to prevent the construction, modification or operation of

a major emitting facility which does not conform to the PSD requirements in Part C of Title I of

the Act.

DEFENDANT'S CLARK STATION

33.  At all times pertinent to this civil action, Defendant was and is the owner and

operator of Clark Station.  Clark Station is located in Las Vegas, Clark County, Nevada.  Clark

Station consists of several electrical generating units that produce electricity for sale.  Two of

those units – designated as Units 5 and 6 – are combustion turbines fired by natural gas or

distillate (No. 2) fuel oil.

34.  At all times pertinent to this enforcement action, Clark Station was a "major

stationary source" and a "stationary source" under the Act and Clark County's PSD regulations,

as approved into the Nevada SIP.  At all times relevant to this enforcement action, Clark Station

was a "major emitting facility" within the meaning of Section 169(1) of the Act, 42 U.S.C. §

7479(1), and a "major source" within the meaning of Title V of the Act and the Clark County

Title V regulations.

THE "B6 UPGRADE" OF UNITS 5 AND 6 AT CLARK STATION

35.  Units 5 and 6 began commercial operation in 1979.  As originally constructed, Units 5 and 6 were Westinghouse W501B5 model "simple cycle" combustion turbines.  Simple cycle turbines use the process of combusting compressed air and fuel ("combustion process") to generate electricity.

36.  Defendant subsequently converted Units 5 and 6 at Clark Station to "combined cycle" turbines.  In combined cycle mode, turbines produce electricity through combustion and by using the hot exhaust gases from the combustion process to heat water into steam.

37.  At Clark Station, the combined cycle conversion involved, *inter alia*, constructing two new "heat recovery steam generators" ("HRSGs") and a new steam turbine, Unit 10.  The hot exhaust gases from Units 5 and 6 are each routed to one of the HRSGs.  In the HRSGs, the exhaust gases heat water into steam.  That steam turns Unit 10, the steam turbine.  The rotating mechanical energy generated by the steam turbine is converted into electrical energy via a shaft connected to electrical generators.

38.  As an integral part of the combined cycle project at Clark Station, Defendant upgraded Units 5 and 6 from Westinghouse W501B5 model turbines to W501B6 turbines.  Defendant and its contractors have referred to this as the "B6 Upgrade" of the turbines.

39.  In several significant respects, the B6 Upgrade was intended to change, and did change, the design and operational characteristics of Units 5 and 6.  These changes include, without limitation, an increase in the turbine firing temperature and cooling design improvements to allow the turbines to withstand the higher firing temperature.  The increase in the turbine firing temperature had the effect of raising the exhaust temperature of the turbines.

- 11 -

That was particularly beneficial for a combined cycle mode of operation where the exhaust gases are used to heat water into steam.

40. In October 1992, construction of the B6 Upgrade of Units 5 and 6 was commenced. Construction was completed in July 1993. Shortly thereafter, the upgraded Units 5 and 6 went back into commercial operation.

41. The B6 Upgrade of Units 5 and 6 was projected to increase, and did in fact, increase: each of the units' actual annual emissions of $NO_x$ by several hundred tons each year; the hours of operation of each of the units; and the maximum hourly emissions rates of $NO_x$ for each of the units.

45. Defendant never applied for or received a PSD permit for the B6 Upgrade of Units 5 and 6. Such a permit would require, *inter alia*, the installation of BACT, as determined at the time of permit issuance, following public review and comment by EPA and the local community.

42. Defendant's illegal emissions of $NO_x$ from Units 5 and 6 continue to this day.

<u>FIRST CLAIM FOR RELIEF</u>

(PSD Violations – Clark Station Units 5 and 6)

43. The B6 Upgrade of Units 5 and 6 constitutes a "modification" under the Act and the Clark County PSD regulations incorporated into the Nevada SIP. As a result of the B6 Upgrade, Units 5 and 6 became "modified" stationary sources of $NO_x$ that were required to obtain a PSD permit for $NO_x$.

44. Defendant has violated – and continues to violate – Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the Nevada SIP, specifically the PSD requirements of the Clark County Sections 1 and 15 of the CCHD Rules and Sections 0 and 12 of the CC Air Quality Regulations.

- 12 -

These violations include, without limitation, failing to obtain a PSD permit for the B6 Upgrade of Units 5 and 6, as specified by the Nevada SIP and the Act, and failing to install and subsequently operate BACT to control the $NO_x$ emissions from the units. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

45.  As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

SECOND CLAIM FOR RELIEF

(Title V Operating Permit Violations – Clark Station Units 5 and 6)

46.  As set forth above, Defendant commenced modifications at Clark Station Units 5 and 6, as defined under the PSD regulations in the Nevada SIP. As a result, these modifications triggered the requirements to, *inter alia,* undergo a new BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. Defendant failed to satisfy these requirements.

47.  Subsequently, Defendant failed to submit a complete application for a Title V operating permit for Clark Station Units 5 and 6 that identified all applicable requirements, that accurately certified compliance with such requirements, and that contained a compliance plan for all applicable requirements for which the source was not in compliance (including the

- 13 -

requirement to meet BACT pursuant to a BACT determination at the time of permit issuance).

Defendant failed to obtain a valid or adequate Title V operating permit for Clark Station Units 5

and 6 that contained emission limitations for $NO_x$ that met BACT pursuant to a BACT

determination at the time of permit issuance. Defendant thereafter operated Clark Station Units

5 and 6 without meeting such limitations and without having a valid operating permit that

required compliance with such limitations or that contained a compliance plan for all applicable

requirements for which the source was not in compliance. Defendant's conduct violated

Sections 502(a) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a) and 7661c(a), and the Clark

County Title V operating permit program regulations (Clark County Air Quality Regulations,

Section 19). Unless restrained by an order of this Court, these and similar violations will

continue.

48.  As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each violation which occurred on or after May 30, 2001, and $32,500 per day for each such

violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1. Permanently enjoin the Defendant from operating Units 5 and 6, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order Defendant to remedy its ongoing violations by, among other things, requiring Defendant to install and operate the current Best Available Control Technology for $NO_x$ at Units 5 and 6;

3. Order Defendant to apply for permits that are in conformity with the requirements of the PSD and Title V programs;

4. Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and report the results of these audits to the United States;

5. Order defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

6. Assess a civil penalty against Defendant of up to $27,500 per day for each violation of the Clean Air Act and applicable regulations which occurred on or after May 30, 2001, and $32,500 per day for each such violation occurring on or after March 15, 2004;

7. Grant such other relief as the Court deems just and proper.

Dated: June 13, 2007

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

PHILLIP A. BROOKS
JUSTIN A. SAVAGE
Environmental Enforcement Section
Environment and Natural Resources
 Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-3637
(202) 616-6583 (facsimile)

- 16 -

STEVEN W. MYHRE
Acting United States Attorney
District of Nevada


*Blaine T. Welsh*

BLAINE T. WELSH
Civil Chief
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada  89101
(702) 388-6336
(702) 388-6787 (facsimile)


OF COUNSEL:
IVAN LIEBEN
Associate Regional Counsel
U.S. EPA, Region 9
75 Hawthorne Street
San Francisco, CA 94105